Timothy Patrick WRIGHT *v.* STATE of Arkansas

CA CR 06-1106                                           254 S.W.3d 755

Court of Appeals of Arkansas
Opinion delivered April 4, 2007

*William R. Simpson, Jr.*, Public Defender, *Brandy Turner*, Deputy Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

DAVID M. GLOVER, Judge. Appellant, Timothy Patrick Wright, was convicted in a bench trial in Pulaski County Circuit Court of the offense of sexual assault in the fourth degree, a Class A misdemeanor. He was sentenced to one year in the Pulaski County Regional Detention Facility and ordered to pay a $1000 fine and court costs. His sole point on appeal is that the trial court erred in not granting his motion for directed verdict because the State failed to offer sufficient proof of his *mens rea*. We affirm the conviction.

At trial, S.G. testified that on September 7, 2005, when she was fourteen, she met someone who said his name was Patrick in Merriweather Park after talking to him several times on the telephone. S.G. identified appellant as the person she met at the park. She said that she told Patrick the first time she talked to him that she was fourteen. S.G. explained that the park where she met appellant was only three to five minutes away from her house; that no one knew that she was meeting appellant there; and that on the day she met appellant, she just walked to the park from her house. Patrick was at the park when she arrived, and she said that she sat down and began talking to him. S.G. said they did not discuss her age at the park, but that they had already talked about that on the phone. She said appellant did not tell her his age on the phone and she thought he was sixteen or seventeen, but when she saw him, he was "much older" than she thought.

S.G. testified that she was with appellant in the park for about an hour; that appellant kissed her on the neck; and that she took her hair down. She denied that appellant kissed her on the lips in the park, even though she told the police detective that appellant had French-kissed her or had tried to French-kiss her. S.G. said that the only thing she remembered happening at the park was appellant kissing her on the neck; she denied that she and appellant touched each other at the park. She said that when they left the park, they got into appellant's car, and he dropped her off down the street from her house. S.G. testified that when appellant pulled over to let her out of the car, he touched her between her legs on the outside of her clothes, and that he rubbed her there for about a minute. She said that neither she nor appellant said anything before or during this time, and that she just got out and went home. S.G. said that appellant called a couple of times after that, but that her mother talked to him and that she never talked to him again.

On cross-examination, S.G. said that she did not remember telling the police detective that she had never told appellant her age. She also denied meeting appellant on a chat line; she said that a girl named Brittney Phillips gave appellant her phone number.

Kristina Gulley testified that she was walking in Merriweather Park on September 7, 2005, when she noticed an older man, whom she identified as appellant, and a young girl in the park; that the girl was "all over him" and that they were kissing; and that she first thought that the man was the girl's father, but realized that could not be the case because of the inappropriate

interaction between the two. Gulley said that she asked two kids in the park how old they thought the girl was; they guessed twelve or thirteen. Gulley watched appellant and the girl get into a dark-gray Corsica; she followed them in her car and saw appellant let the girl out behind some apartments after they kissed. After the girl walked to her apartment, Gulley knocked on the door and told the girl's mother what she had seen, which surprised and upset the mother a great deal. S.G.'s mother testified that after Gulley told her about witnessing the older man and the young girl kissing and the man fondling the girl, she "lost it" and called the police. She said that appellant called a couple of times but did not call again after she said that she was going to call the police.

Rob Bell, a detective for the Little Rock Police Department, testified that he interviewed appellant and that Wright admitted that he had been in the park with S.G. at the time the witnesses had seen him. Bell said that when another detective asked S.G. if she had told appellant her age, she said no because he had not asked.

The State rested, and the defense moved for directed verdict, arguing that there was not any way appellant could have known that S.G. was under the age of sixteen. The trial court denied appellant's motion.

Appellant, who was thirty-two, then testified that he met S.G. through a telephone-chat line that required all parties to be at least eighteen to participate. He said that S.G. told him that she was nineteen, and that he had no reason to doubt her. He said that when S.G. came to the park, she was smoking a miniature cigar and was wearing a black bandana. He said that they hugged, but not in a sexual way, and that she again told him that she was nineteen. Appellant said that S.G. was very forceful with him, leaning into him so that he could not get up, and that she was kissing him. Appellant said that he took her home after about twenty minutes because he was uncomfortable. He said that he gave her a ride to the place where she told him to drop her off.

On cross-examination, appellant stated that S.G. told him several times that she was nineteen and that he believed her because he was naive. He said that he began to think that she was not nineteen after his conversation with her mother on the phone. He again said that S.G. had been very aggressive with him, and that she told him she was in a "Folk" gang and knew a lot of people in the park. He stated that he was afraid to push her away when she

became aggressive because he was scared that the "Folk people" would come after him if he resisted her. Appellant testified that he put his hand on S.G.'s thigh, not her private area, while they were in the car, and that it was "out of habit" because he did that when he was riding with his fiancee.

Appellant renewed his motion for directed verdict, which was again denied. The trial court then found appellant guilty of sexual abuse in the fourth degree.

A person commits sexual abuse in the fourth degree if, being twenty years of age or older, the person engages in sexual contact with another person, not the person's spouse, who is less than sixteen years of age. Ark. Code Ann. § 5-14-127(a)(3) (Supp. 2005). Appellant argues on appeal that because no mental state is specified in the statute, a mental state of "recklessly" applies as the default mental state, citing Ark. Code Ann. § 5-2-203(b) (Supp. 2005), and that the State failed to prove that he acted recklessly with regard to knowing S.G.'s age. We find this argument to be unpersuasive.

While it was the State's burden to prove that S.G. was in fact under the age of sixteen as an element of the offense of sexual abuse in the fourth degree, the State was not required to prove that appellant knew S.G. was younger than sixteen years old. Arkansas Code Annotated section 5-14-102(d)(1) (Supp. 2005) provides that "when criminality of conduct depends on a child's age being below a critical age older than fourteen (14) years, it is an affirmative defense that the actor reasonably believed the child to be of the critical age or above." Arkansas Code Annotated section 5-1-111(d)(1) (Supp. 2005) requires that the *defendant* shall prove an affirmative defense by a preponderance of the evidence. (Emphasis added.) Therefore, it was appellant, not the State, who had the burden to prove, by a preponderance of the evidence, that he reasonably believed S.G. to be older than sixteen. *See Clay v. State*, 318 Ark. 550, 886 S.W.2d 608 (1994) (it is a defendant's burden to prove affirmative defenses).

Affirmed.

ROBBINS and HEFFLEY, JJ., agree.